This next case is Case Number 4-17-0436, Williams Brothers Construction, Inc. v. Board of Trustees of Heartland Community College. Appearing for the appellant is Attorney Stanley Wasserman and for the athlete is Attorney Andrew Ramage. Good morning. Mr. Wasserman, are you ready to proceed? May it please the Court, Counsel. Good morning. We've already sat and you know who I am. We're asking the Court to reverse the trial court's denial of our post-trial motion and grant Williams Brothers a new trial. And we've placed before the Court three grounds that we believe warrant, clearly, a new trial. Two of them are significant evidence that we submit our abuses of discretion. One, of course, can be reviewed as a de novo review. And then we have the inconsistent verdicts, Count 3 and Count 4, for which it was ruled in our favor and money given. At least on Count 3, 4 is an alternative theory. And against us on Counts 1 and 2. I'm going to take my arguments in the order of my issues in the brief. Judicial admission. This clearly is certainly probably a case of first impression, at least as far as I could tell. This is an error of law. We've given you the standard. It can be abuse or... That's 100% correct, Judge. I looked extensively and I just don't believe this issue came up in this context. But as we indicated in our brief, that does not mean the issue cannot come up. But there isn't an absence of law in the area of judicial admissions. There is some commonality here in terms of what case law currently says about what is susceptible to being a judicial admission. And it can't be an opinion. Is that right? That's correct. I was going to start off by addressing that point as my first point. I believe there's no question that Heartland's statement that it adopted the opinions of Williams Brothers expert Bass was a statement of fact for the following reasons. One, it's an affirmative... Did they say they adopted the opinions or that they were adopting the witness? No. They said they were adopting the opinions. In an argument, but not in the brief. In writing, in the back and forth, in the summary judgment stage, when BLDD, the architect, moved for summary judgment against Heartland, said, you never disclosed an expert. Heartland responded and said, whereas in the Rule 213 disclosures they said we reserve the right, when they came to the pleading, they said we adopt. And we adopt, or we adopted. And then they did it again in the reconsideration. And they laid out all the opinions. They argued the opinions. They did it orally. And one of the points I was going to make to the court is I believe that if Heartland had stood up an opening statement and said the same thing to the jury, I think the trial court would say, hey, you made an admission. And I think if we had posed an interrogatory on that issue and that was the answer that came back in an interrogatory, that would come forward. What's the difference here? You can make an admission, and I'll get to whether it is a statement of fact. You can make an admission, the case law is clear, in pleadings, briefs, whatever. Statements by counsel are routinely considered by trial courts. They have consequences of trial courts. In this case, I believe it falls within the parameters. So, yes, it's in the pleading in that sense. It was in writing and orally advocated when it came to a substantive argument. In the context of the summary judgment. Which was part of, that case was, that's correct, that third-party case wasn't severed. That whole case was all, this was one case. It wasn't a severed trial. It wasn't filed separately. For the purposes of summary judgment, why couldn't they make such a statement in order simply to establish that there is a question of fact? I think they could, but I think in this case they went farther than that. Because. Why would they go farther if it's a summary judgment motion? That's as far as the motion goes. I can't answer why they would do what they did. But I believe if you look at what, in fact, they did, they went farther. This isn't like the cases where, for example, someone files a rule 21619 motion or 613. You have to assume for purpose of argument that it's the facts that was in the pleading. Because what happens here is they went farther. They affirmatively advocated. They put those opinions in front of the court. They said this is going in front of the jury. We adopt their opinions. And these opinions have the following consequences. And if I can now, if I could just go back to Justice Harris, what you indicated. So we believe it's a statement of fact for the following reasons and not an opinion. It is an affirmative positive statement of their belief, their contention. We adopt the opinions of William Bass. They didn't couch it or state it in terms of an opinion. It was clearly declaratory in nature. It wasn't, as they argue, Harlan and I, it wasn't a summary or a mere reference to Mr. Bass' opinion. They expressly even stated the opinions. They quoted the opinions. They argued the opinions. It's not debatable. Their statement's not debatable because there's some judicial mission questions. Is there ambiguity in there? Where's the admission, then, in that? If that's what you're doing, if you're backing out and saying the statement that we adopt the opinion is in fact itself a statement of fact, how does that constitute an admission? Because I looked at it before, wasn't appreciating the nuance that you're describing here. The admission I thought that you were claiming was Bass' opinions themselves, that those constituted the admissions. No, in fact, I think, okay, I understand why, because I did the trial court. We had to make that argument at the trial court. I think if it was just opinions, that would be a different issue. But to come in front of the trial court and say, we adopt those opinions. And when you adopt opinions, I mean, there's consequence to the statement of adoption. It would be no different. I guess you could be worded differently. Look, we agree with those opinions. Why would one adopt opinions if they didn't agree with them? One would adopt opinions if they didn't intend to put them in front of the jury, which they did. It's the same thing. It would be no different. You're saying that they said, somewhere in this record, that they are adopting the opinions of these expert witnesses for purposes of trial. They said that they were adopting the opinions because that was going to – the reason they said they were adopting the opinions was to show to the judge that they were going to go forward with them in trial. That was the whole purpose, to beat this summary judgment. You're saying that's in the transcript? Yes. Okay. Yes. In fact, we quoted in our brief, and I could pull it out if you need to, but each of the – they did it in the reply to BLDD's motion for summary judgment. They did it in their motion for reconsideration. They did it in the transcript. I think the two have been referenced in our reply brief, too. But, yeah, it was asserted. And they're saying, that's why we adopted. Because, remember, Your Honor, it came up in this issue of BLDD. They said, you don't have any. You don't have any opinion. You have no evidence, effectively. Opinion evidence. And Heartland said, yes, we do. We adopted Mr. Bass' opinion. At the beginning, they reserved it. Then they changed it to adopt the opinions. But it's not their version of facts. It's not some conceptual argument of counsel. And so everything that would not be a fact, I would say it's not. And if you think of what a jury does, what does a jury do? A jury takes facts. They evaluate facts. They draw their conclusions from the facts, right? And this would be one fact that the jury could consider, which is to hear that Heartland adopted the opinions of Mr. Bass. So prior to trial, they took one position. When it was convenient and they lost at summary judgment, they flipped. The trial judge now prevented the jury from hearing this, and we think it is an admission. It was a rough road to get to that point, admittedly. But that's why we believe it's an admission. And what did the trial court do? The trial court said it did not consider it to be a judicial admission for purposes of the trial. That's all the court said. Record 233-234. And they said, the trial court said, well, we agree with, I agree with Heartland's arguments. So what were the three main arguments that Heartland argued? One, they said Williams-Rosen didn't cite any authority. Well, that's true. It's a novel issue. I don't think not citing authority doesn't add weight to the argument, admittedly, but doesn't bar the issue or the decision. Heartland said when, and this is at Record 230, when we adopted a witness that we might call, we were not admitting the facts contained in the witness' opinion, which is somewhat what your honors were looking at. But the issue isn't that Heartland was adopting the facts. It's the issue is the fact that Heartland adopted the opinion. We think that's critical in this case. And like I said, why would they be adopting the opinions if they weren't otherwise adopting? If I had a witness, for example, who was only my witness, opinion witness, I didn't call the witness, I'm going to be looking at a missing witness instruction, whether I adopted the facts or not of that witness. If I don't call that witness, the jury gets to hear, hey, I had an opinion witness out there. So it's akin, I think, to the same consideration. Three, Heartland said they only adopted the opinions to show there was a question of fact, on standard of care, but the same opinion that goes to standard of care is also an opinion that goes to the issue in the primary case. So Heartland, like any party, you can invoke the language of the other party's discoverers. And that's what they did in this case. And as I said before, missions of counsel are constantly looked at and considered. They told the court, as I said, without hesitation. They're stating the opinion. They argued it. They said it was specific. This was in a 213 context? Correct. The original 213 disclosure only said they reserved, never named anybody, never gave any opinion. So they're responding to expert, who you're going to call, what you're going to present in 213. What they're responding to is when BLDD filed a summary judgment motion and said, the law says you need an expert on standard of care. You have no expert on standard of care. Heartland responded and said, yes, we do. We're adopting. We're reserved, which they said in their 213. So if they had said, our expert on standard of care is this guy, in response to your motion for summary judgment, that would have been adequate? Not our motion, the BLDD motion for summary judgment. Would that have been adequate for them responding to BLDD's motion? I don't know that that would have carried the day because that didn't carry the day. It was the same almost contention. It didn't carry the day in the eyes of the staff. Well, the reason I made this is lots of 213 responses are everywhere in civil litigation. And the notion is that this is going to be a judicial admission by what you say about who you might present? No. I don't think that's what I'm saying. 213 is everywhere. And I think there's two points to answer, Your Honor. 213 is, look, if I say I have opinion, I disclose witness opinion X, and I don't call that witness, I don't put that in front of the jury, there's an adverse consequence to me. In this case, it wasn't just that because initially they just said we reserve the right to adopt. The adverse consequence is a different issue entirely. It doesn't automatically follow that if a party indicates someone they might call in 213, they don't call them, that you're going to get that instruction. Right. You seem to be assuming it's a given. No, it's not a given. I assume it's not a given. But more importantly, in this case, is they affirmatively went in front of the court and made a statement of what we say is a statement of fact. We adopt those opinions. Those opinions are unequivocal. They're specific. They're severe. They can be believed by a jury. For the purpose of the summary judgment motion. Well, but yes, but. Well, given how judicial admission must be unequivocal and intentional, and notice to be bound in something like the equivalent of judicial estoppel, why should all that be found in this case? It seems to me that your argument demonstrates, if anything, they were just sloppy in saying something beyond which they needed to say. I don't think it was sloppy, Your Honor. I think they made an unequivocal statement. Why did they have to say it? I don't, that. Well, the point being, that's why, you know, this was. They had to show. They had to show to the court. Yeah, we have this witness available. Here's a witness that we might call. Wouldn't that have been adequate? They could have, but that's not what they did. Wouldn't that have been adequate? For the. For the purpose of the motion. Heartland could have responded that way. Okay, so by saying what they did, how does this meet the standard of a knowing unequivocal adoption of a fact? Well, I think it's knowing because they. No, just sloppy language. They said something they didn't have to say, and the trial judge said, yeah, this is a 213 context. I guess that conclusion could be drawn, but I believe that. And no other case is ever so held under 213. I don't know that it's necessarily come up in a 213 case. Well, we have 213 responses. You said it happens all the time. No, I said what happens is you get a 213 response. Other parties certainly can adopt the other language out of their ones. It's not unusual to do that. Why isn't this just kind of the sort of technical arguments that people who aren't lawyers and angels dancing in the head of pin would say, what are you talking about? Why don't we get this case resolved on the merits? As opposed to claiming they made this acknowledgment and now they're stuck with it. What acknowledgment? And they didn't have to do it, and maybe they shouldn't have said it, but it's beyond what they need to say anyway. Right. I think the issue, Judge, is because it's coming up in the summary judgment context, that is the precursor for what's coming at trial. They're making statements about matters and saying to the court, if they had made, we think it's a factual statement, they had said, you know, if they had counsel said, look, the evidence shows X, okay, then why would that not be held against them in trial? Well, because they're only arguing the summary judgment motion, whether or not there is a genuine issue of material fact. That's the only issue that the court is faced with, and that's the only issue that they're addressing at that moment. I need to go back because I didn't live with this case like you did, okay? But correct me if I'm wrong as to where these references come up. I have it in their 213-F3 disclosure, where they reserve the right to adopt and call witnesses. All right? Then I have Hartland's response in opposition to BLDD's motion for summary judgment. In a footnote, five, Hartland disputes not disclosing an expert as it, in its rule 213-F disclosures, adopted all of the 213-F witnesses disclosed by the parties. Again, that's in response to the motion for summary judgment. And I have it again in Hartland's motion to reconsider the 921-16 order granting BLDD's summary judgment motion, where they do then set forth William Bast's opinions, as you said. Again, this all goes to whether or not there's a genuine issue of material fact. They go through that lengthy explanation of experts. And they say again, in this case, Hartland adopts all of the parties' 213 witnesses. That's in the motion to reconsider the 921-16 order granting BLDD's motion for summary judgment. Again, it's within the context of the summary judgment motion. Then, in the transcript, WBCI's intent to offer and use the judicial admission, Mr. Ramage? Ramage? First of all, we never used the words we adopt their opinions as the facts in their opinions. We argued that Mr. Bast, their expert, him, his opinions, given his deposition, combined with Dr. Garrett's opinions, we felt was sufficient to create a genuine issue of material fact on the issue of whether there was a deviation from the standard of care. You're saying that if they are using this specifically and exclusively for that purpose, that now opens them up, and it was their intention to use those opinions, or allow you to use those opinions, as judicial admissions? Yes. Okay. And are there any others other than what I? No, those are. Those are the ones we cited in our brief, and that's it. That's the context. So there's nowhere that they've said, Judge, we're adopting these opinions for purposes of trial? Well, I think that that's what they're saying in those things, because they're going in front of the court in summary judgment, saying, we have adopted these opinions, therefore we do have this evidence to go to trial. But that's not for trial. That's for addressing the summary judgment motion. Are they going to make it past that motion or not? That's the extent of their use. I understand. Okay. I think I've answered. Quickly, the hunting letters, if you can address that question. Yeah, could I? I think I saw that. So, real quickly, so let's look at the context that they come in front of the court. It's a hotly contested issue of who's at fault. The jury had already repeatedly heard Williams Brothers said design. KJWW, the Heartland consultant, said construction. They heard that Huntington had, I mean, he was not the designer of record. It was Kevin Gross. The Rod Justice letters were in there. They are very brief summary little statements on about two of the letters. It comes in front of the court. The argument to the court is rule of completeness. Whether you look at the common law or look at rule 106. I mean, 106 wasn't cited to the court, but let's assume that it's in there. It doesn't apply. One, we argued there was nothing to complete. There was nothing to complete. There was nothing, and Heartland never said there was anything in Mr. Justice's letters that were misleading or incomplete in any fashion. That's what the rule talks about, out of fairness, in order to make sure it's complete. The purpose is so the jury doesn't get misled. There was nothing about that. Nobody said anything that anything was unfair. I would argue that there wasn't anything contemporaneous. Mr. Justice sent a letter, Plaintiff's Exhibit 20, in our Supplemental Appendix, June 17, 2009. About a month later, the first letter comes out from KJWW. It's Defendant's Exhibit 44, also in there. That's July the 13th. The first one is Supplemental Appendix 10. The second is Supplemental Appendix 21. And he says in there, we're responding to the frequent letters and claims. Well, there were no frequent letters and claims, first of all. And second of all, I would suggest there was nothing to reply to. Thirdly, if you look at the... Mr. McClosser, I'm sorry. I'm sorry. You've been out of time here. You'll have time in rebuttal. Okay. It'll go beyond. I've lost some time. I appreciate it. Okay. Thank you. Thank you, Your Honors. Mr. Radley. Your Honor, there was adjourned verdict here. And the plaintiff is asserting that basically Judge Lawrence committed errors that justify reversal. I want to tear right into this judicial admission issue because I think it's the centerpiece. First of all, as Judge DeArmond, you pointed out, you had it exactly right in the record. We never said we adopted the opinions of the witnesses. That was never said. That's a twist on our argument to the plaintiff's convenience to try and fit their theory, which, by the way, they concocted on the day of trial, this judicial admission theory filing on the day of trial. If it was so clear that we made a judicial admission, why did they wait and say upon further reflection, we think it's a judicial admission, and pursue that? What happened here was the summary judgment by which the plaintiff didn't participate in the summary judgment proceedings because it was a contingent claim, Heartland's contingent claim, on a professional negligence standard. And that was the issue on summary judgment. The third parties were saying, Heartland, you didn't disclose any witnesses to meet this professional judgment standard. And we disagreed that it was a professional judgment negligence standard. We lost on that. But we said, notwithstanding, the record as a whole demonstrates from all the witnesses, because there were a plethora of engineers and experts from plaintiff's expert and engineers retained experts, you know, the classic finger pointing. And we said, no expert might have used the words, there was a deviation from the standard of care as to our contingent claim, but the record as a whole, there were testimony about the violation of the steel code and all these improper things, things were built out of tolerance. We said, that is enough to get to the jury on the issue of the contingent claim. Judge Foley, who heard the motion, disagreed. And in the context of that, we said, when we said we adopted the witnesses, trial lawyers, anyone who tries cases and litigates, like I do, know this is a common practice. Your opponent does a 213 disclosure, you do yours, and then you have a catch-all statement, we adopt your witnesses too, because if I don't adopt them, then I don't get to call them at trial. That's why you adopt them. You're putting them on notice. And by the way, that's what happened here. The plaintiff, in their 213 disclosures, didn't adopt Hartland's witnesses, and I made a motion, and it was granted that he wanted to put our witnesses on, adverse witnesses in his case-in-chief. The judge says, no, you didn't disclose them. That's what happened. It wasn't a judicial admission at trial. And by the way, these contingent claims, as the court is aware, that's how this works. You have the plaintiff sues the defendant, try that case, and then if the third parties had not been let out of the case, there would have been our claims against them. And it's like, if we're liable, it's because of that. And so there was no even implication that the cause, that we agreed with vast opinion. We were just setting the court. Here's the record, your Honor, in looking at the summary judgment standard, there's enough to go to trial. We lost. That was what happened. And I know because I wrote it, the summary judgment, and I argued it. So that's what the intention was. And I apologize in advance to the court for missing this. Both parties cited the North Shore Community Bank case in the briefs. In the North Shore opinion, which is at paragraph 119, and this is important, it cites a case, Fourth District case, 2009. None of you were on the panel. The Herman versus Power Maintenance and Construction, 903 Northeast 2nd, 852, 388 Hill Ave. 3rd, 352. Cites a Herman case, and it says, noting the doctrine of judicial admission, should not be applied to an attorney's statement of legal opinion in a summary judgment proceeding, especially if the opinion was manifestly incorrect within the context of the statement itself. And if you look at the Herman case, it's clear that that was an argument.  I contend that Heartland was doing exactly what it needed to do in defending the summary judgment, and it was an argument, and it wasn't an adoption of the substance of the witness' opinions. So I would encourage the court to look at that case, because I submit it is an analogous Fourth District case that directly speaks to the issue. The other thing that I would like to mention about this is that, and I don't want us to win on a technicality, but the plaintiff waived the argument. The plaintiff says, we Heartland made a judicial admission, and the consequence would have been to bar us from cross-examining him, and bar us from presenting Dr. Garrick as an expert. When those witnesses were presented, no objection was made. They filed a motion at limine, the case law is clear, that we say, you have to preserve it at trial. They did. Then they say, well, it still wouldn't have barred the jury from being instructed that you adopted the opinions. Well, there was no jury instruction. There was no objection at the jury instructions. There was no offer of proof. And I also would say, as a practical matter, if it was so clear that Heartland made a judicial admission, and as they contend, in their brief at page 31, Heartland made an affirmative act of admitting vast opinions that were the sole cause of the deflection, basically admitted liability. If we admitted that, why didn't they ask the court for leave to file summary judgment, that there's really no issue? Why in their 304A response, when we filed the 304A, did they not say, well, as an additional reason, the court shouldn't grant the 304A. We wanted to put this issue before the appellate court and say, well, there's no issue here, because they admitted liability. They didn't do that. Let me see if I understand. You're saying they filed a motion at limine to bar your expert from testifying? Yes, they did. Based on the fact that it was inconsistent with the judicial admission? Right. That was before trial? Yes. And the trial court denied it? Correct. And then your witness was called to testify? Yes. And you're saying there was no objection to his testimony, because they did not reassert what they had said in the motion to eliminate? Yes, Your Honor. What was the time factor? Was this motion to eliminate, if I understood you correctly, shortly before trial, or how did that work? See, what happened, Your Honor, the motions limiting were filed at least a month before trial. At least what, a month? At least a month. Okay. Including this one about the judicial motive? No, if I can just briefly explain. Okay, go ahead. So they filed a 213 motion, and they changed their positions, the bottom line here. They said, our 213 disclosures were improper. We shouldn't be allowed to call any opinion witnesses. They lost that. They had an alternative basis in their motion to eliminate three, was that we should be, the jury should be instructed that we adopted Bass' opinion, supposedly. That was their alternative basis. They didn't call it a judicial admission. That was denied. Then on the day of trial, they filed this notice of intent to use Bass' testimony as a judicial admission, which was a motion eliminating in disguise, a repackaged argument on a slightly different theory, and they lost that. So the trial judge denied that before picking the jury? Right. And then when you called a witness, what happened? Well, first they called Bass and presented him, and we cross-examined him. There was no objection to our cross-examining him. Then we called, in our case in chief, Dr. Garrett under subpoena. Whose testimony was supposedly inconsistent with your supposed judicial admission? Right. He was the engineer's expert. So your position, if I understand correctly, is to preserve their objection or this motion to eliminate that was denied, they needed to object to what was his name? Bass' cross-examination and Garrett's direct examination. Right. And they didn't object to either of those, so Garrett's testimony comes in, meaning that they have been forfeited their claims under the motion to eliminate on judicial admissions? Yes, Your Honor. Okay. I just want to make sure I understood the sequence. Go ahead. That's our position. In regards to Huntington, Huntington was part of testifying his true opinions, right? Correct, Your Honor. Okay. The letters came in and Huntington's opinions are expressed in the letters, is that right? Yes. Were there any opinions that you had originally sought to put before the jury that didn't come in through the letters? I'm not sure I understand that question, Your Honor. Everything you wanted to get in before the jury come in, in the format of these letters, you were barred from? We were barred. I mean, all the evidence we wanted to get in was already in. These were to establish notice. There were a couple times that Huntington was asked some opinions. There were objections. Those objections were sustained. I think I started to ask him about a deflection and the court sustained the objection. I think there were a couple. One question that I tried to rephrase. Okay. Go ahead, Your Honor. I was just going to say, in terms of Huntington's opinions, he was barred from testifying as to those opinions, but there was, I don't mean this in a pejorative sense, but there was an end run in that Huntington's opinions came out through the letters. Is that right? Huntington had certain opinions about, yes, Your Honor, about, right. The jury was instructed that the letters were being admitted for a limited purpose. I guess what I was asking was, were there any other opinions that you had wanted Huntington to testify to that weren't put in front of the jury, subject to the limited instruction? Or did you get it all in? All that we would have wanted Huntington? Yeah, from Huntington. I'm not trying to be cagey, but we were never going to ask Huntington opinions about his letters. I didn't even try and read from them. So the letters were, I don't know how to describe it. It's just the ten reasons I stated, we thought they were independently admissible, and the judge agreed. And the thing of it is, this balancing that the plaintiff talks about, that it wasn't necessary to balance the record, right there. That is evidence that the judge exercised his discretion. And the last thing I would say, I know I'm out of time, is that with the limiting instruction, they have to show excessive prejudice. There wasn't excessive prejudice here. And again, another waiver issue, in the closing argument, they didn't object to the closing argument about the supposed inappropriate statement in reference to Huntington. And I would also say that the witnesses, both sides, both lay witnesses, were allowed to testify that we believe this was a design issue, we believe this was a construction issue. So in that sense, Huntington was absolutely no different. The plaintiff's F1 witnesses were allowed to say, we felt it was a design issue. So what I think is, this is a matter of degree. His own F1 witnesses had opinions in his letters. He thinks ours were more extensive. The one letter that they objected to was certainly longer. But the core of what was going on there was the same. Thank you, Mr. Wright. Thank you. Mr. Weiss for the rebuttal. Hopefully I can address some of Huntington. Just real quickly, Mr. Huntington was never disclosed as an expert witness by anybody, any party, even KJWW. So he had no opinions. These were his opinions for the first time coming out when the letters came out. It wasn't a question that they get out every opinion. Before you testify, did you renew your objection about the judicial notice matter? I'll address that. We did, but we don't believe we had to. That was a ruling of law by the court. The court determined that this was not, as a matter of law, a judicial admission. What do you mean you didn't have to? Did the motions in Lemonet have to be repeated during the time that the evidence in question is being offered to trial? There was no – we were – the court ruled that the evidence that we wanted to offer was illegally – was not legally proper. So nothing was being offered to trial. There was nothing to object to, nor was any more facts going to come out that would have a bearing on the decision. Well, wasn't your effort made to bar Huntington's testimony? Because it was – Well, we were successful. The court granted our motion in Lemonet that said that he was an undisclosed expert witness. He was barred from providing any opinion testimony. And then when the letters came up, we said, these are replete with opinions. They don't meet the rule of completeness. So let me – if I can go back to Huntington where I left off. I talked to you about why the rule of completeness didn't apply. Another reason why you can see the arbitrariness of the abuse of discretion. Look at what the judge let in over our arguments. Defendant's exhibit – supposedly notice to VLDD and Hartman to complete. That's the theory of why they're put forward. Look at Defendant's Exhibit 50. We said that's an internal email. It never even went out the door of KJWW. Mr. Huntington admitted that himself in the record, 730 and 732. The judge let that in for completeness. Look at Defendant's Exhibit 55. This was on the – 55, 57, and 58 – 57 is the letter, 58 are the supporting documents, and 61. All of them, one right after the other, they're addressing this Mauerstudt survey. They're voicing the opinions of Mr. Huntington about the Mauerstudt survey. Mr. Justice never mentioned the survey. He doesn't mention the survey until a brief sentence and a letter in December 2009 after all of these communications are given. So they're not responding to anything, let alone that there's anything that needs to be responded to. In Defendant's Exhibit 55, Huntington gives BLDD and says, look, here's a code, attaches the code. Here's a code. I mean, this is putting. This isn't responding to anything. And he said, this will aid you in coming up with how you can refuse to pay Williamsbrough. So this has nothing to do with rule of completeness. None of this should have allowed in. If you look at – so 61 also was the survey. There was nothing there. So it's hard to see how the trial court gave conscientious thought to this when it's looking at these, and they have nothing to do with the concept. If you look at the ten asserted reasons. Even during questioning with regard to those exhibits, any time there was a question asked seeking Huntington's opinion, there was an objection which was sustained, wasn't it? Right, but I mean, the letters were coming in. I mean, he wouldn't – I mean, we tried to say – I mean, I think it was evidence of the – that's what the letters were all about, which is why we argued the limiting instruction. But when you're saying that the trial court wasn't exercising its discretion in analyzing the evidence as it was coming in – No, when it initially – before the witness took the stand, we went through the exhibits, because we said we're going to have objections to those we didn't want to keep in front of a jury, have a back and forth. So Mr. Ramage ended up being like late at night. I got the list of letters. We came in the next day. We argued them before Mr. Huntington took the stand. And the judge said, no, these are coming in. I agree. Rule of completeness. He let them in. And I'm saying, if you look at that, I don't think it was an abuse of discretion, because look what he was doing. Rule of completeness. How is anything completing anything in this case? How is – and some of the board doesn't even notice. And if you look at 44, which is the multi-page table, I think I'll say it on my brief that we didn't open the door to that. That was a legal – he was giving legal opinions about how he was interpreting the contract, why they took the position, none of which had – justice never mentioned any of this stuff. So I would suggest that that was the case, and that's why we argued that a limiting instruction under the circumstances here, and this is rare, you have to respect the jury, you know, the limiting instruction they would follow. But there's some cases, we cited the Cardamone case, the Fifth District I believe it was, that sometimes the volume of the evidence and the significance of it, the limiting instruction just isn't going to apply. And I would suggest that that's the case here. I think the jury was not going to look at pictures, was not going to see tons of calculations, was hearing it over and over. And there was no reason for it, because we said the jury had heard this repeatedly, that they had cross-examined Mr. Justice. Every time when you do this, you're saying design versus construction. I mean, it was – the notice was there. Maxie acknowledged it. Whitmer acknowledged it. Everybody acknowledged it. So A, there was no reason to do it. There was nothing to complete. And it just jammed all of this expert testimony in that was never entitled to come in. And it got then emphasized, the power of it, was, oh, I'm asking you a question on cross, and I make a statement in closing argument. You're right, we didn't object to the pop-up, but we did get a chance to reply to it. Bottom line, we'll give you one second to explain the last argument. Irreconcilable, inconsistent verdicts. The only thing I'd like to say about this, A, it's the NOVA review under the Redmond Supreme Court case. There's nothing in Redmond that says it has to be the same elements. And I think this is a classic case. When the whole case is presented to the jury on a single set of operative facts, how do they find that Heartland is unjustly enriched if we were at fault? And how do they find that the circumstances warrant Heartland paying if we were at fault? You look at why the elements on the other one, the only main contested issue on the other counts was, were we responsible or were they responsible for it? For the reasons we submit in our brief, we say it's inconsistent. Irreconcilable. Thank you very much. Thank you, Mr. Wasser. Thank you both. The case will be taken under advisement and a written decision shall issue.